Filed 4/9/21 P. v. Jackson CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| THE PEOPLE, | B299685 |
|---|---|
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA073288) |
| v. | |
| JULIUS CAESAR JACKSON II, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Shannon Knight, Judge. Affirmed as modified.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

A jury found defendant and appellant Julius Caesar Jackson II guilty of multiple felonies, including attempted murder and kidnapping to commit robbery. Defendant contends his conviction for kidnapping to commit robbery is not supported by substantial evidence and that the aggravated kidnapping statute is so impermissibly vague that it violates due process. Defendant also contends the one-year prison prior enhancements must be stricken from his sentence in light of the passage of Senate Bill 136 (2019–2020 Reg. Sess.) during the pendency of this appeal and that the abstract of judgment must be corrected to reflect the correct amount of fees imposed by the trial court at sentencing.

We conclude the one-year enhancements must be stricken and modify the judgment accordingly. We otherwise reject defendant's contentions and affirm the judgment of conviction in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by information with attempted murder (Pen. Code, §§ 187, subd. (a), 664; count 1), kidnapping to commit robbery (§ 209, subd. (b)(1); count 2), kidnapping (§ 207, subd. (a); count 3), second degree robbery (§ 211; count 4), assault with a firearm (§ 245, subd. (a)(2); count 5), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 6), unlawful possession of ammunition (§ 30305, subd. (a)(1); count 7) and attempted second degree robbery (§§ 211, 664; count 8). Firearm use allegations were alleged pursuant to sections 12022.5, subdivision (a) and 12022.53, subdivisions (b) and (c). It was also alleged defendant suffered a prior conviction that qualified as a serious or violent felony (§ 667, subd. (a)(1), § 667, subds. (b)–(j),

2

§ 1170.12) and three additional prior convictions qualified as prison priors (§ 667.5, subd. (b)).

The charges arose from events that took place in the early morning hours of February 21, 2018. John Carreon was working the front desk at a hotel in Lancaster when he saw two individuals approach the glass lobby doors around 4:00 a.m. They were wearing gloves and hooded sweatshirts, and had bandanas tied around their faces. They attempted to yank the front doors open. Mr. Carreon pressed the button at the desk that activated a magnet to prevent the doors from being opened. After pulling on the door handles several times, the two fled in a dark-colored car. Mr. Carreon called the sheriff's department and reported the incident. The call was played for the jury. Video footage from the hotel security cameras showed one of the individuals approaching the hotel doors with a gun, wearing camouflage pants and a hoodie.

Thirty to forty minutes later, Todd Gear was in the driveway outside his Lancaster home loading up his truck with his work tools. He noticed a dark blue car with its engine running had stopped in front of his neighbor's house in the middle of the street instead of at the curb. That seemed odd but Mr. Gear continued what he was doing because he needed to get to work.

As Mr. Gear started to get into his truck, he felt someone grab him from behind and press a gun against his head, under his right ear. He heard a male voice demand all his money and threaten to kill him if he did not comply. The man's left arm was around Mr. Gear's neck in something like a chokehold. The man reached into Mr. Gear's pants pocket and took his wallet.

The man then dragged Mr. Gear approximately 25 to 30 feet into the middle of the street and ordered him to get down on the ground and stay there. While laying face down in the street, Mr. Gear could see the man was wearing camouflage pants and light gray or blue running shoes.

The man got in the passenger side of the waiting car and the car sped off. Mr. Gear was shaken but he decided to follow the car in his truck. He called 911 as he drove. Soon afterward, he saw the car pull over, and the man from the passenger seat got out and crouched down near a telephone pole. Mr. Gear almost immediately saw a muzzle flash and was sprayed in the face with glass from a bullet shattering his windshield. Mr. Gear quickly turned his truck around to get away. He was still speaking with the 911 operator, explaining what was happening. He stopped his truck and waited for the sheriff's deputies who arrived on the scene shortly thereafter. The 911 call was played for the jury.

Defendant was on parole at the time of these events and wearing a GPS monitoring device on his ankle. Data from that device showed defendant was in the vicinity of the Lancaster hotel, Mr. Gear's home, and the location on the street where the shooting occurred at the relevant times.

Defendant testified. He said in February 2018 he was homeless and living in his car (a 2008 blue Yukon). He admitted he was on parole and wearing a GPS monitoring device on his ankle.

He said that on February 20, 2018, he visited several different locations of a gambling club called Tap Tap. In the early morning hours of February 21, he drove to a local hotel to drop off his girlfriend but could not recall exactly which one it

4

was.  He went to another Tap Tap location and while in the parking lot, he changed his clothes because they were dirty.  He admitted he had been wearing camouflage pants and running shoes.  A guy called Lojack that he knew from clubbing showed up with a Hispanic male he did not know.  They got into defendant's car with him to do drugs.  Defendant started watching a movie on his phone and eventually fell asleep in the back of the car.  He was awakened by the sound of gunshots.  He had no idea where he was but because he was on parole, he wanted to get away from whatever was happening.  He jumped out of the car and took off running.  Defendant eventually called his friend Tay to come pick him up.  He did not call the police to report what had happened.

The next day, Tay drove defendant to his friend Crystal Provencio's house where he kept some of his belongings and often took a shower because he was homeless.  He noticed his car was parked on the street near her home.  He said he had no idea how it got there.  Before leaving, he left some of his dirty clothes at Crystal's including the camouflage pants he had been wearing that night.

The following night, defendant was sleeping in his car when he was awakened by several deputies knocking on the window.  The deputies told him his car matched the description of a vehicle used in an armed robbery.  Defendant said he was frightened and did not want to go back to jail and he reached for his handgun that was tucked between the seat and the center console.  The deputies yelled at him to put his hands on the steering wheel and he eventually put his hands in the air.  He said he was then pulled from the car and arrested.

5

Defendant denied attempting to rob Mr. Carreon and denied robbing or shooting at Mr. Gear.  Defendant said he was asleep in the car at the various locations where the GPS records for his ankle monitor showed him to be.

The jury found defendant guilty on all counts, except count 3, the lesser included to count 2.  Count 3 was dismissed.  The jury found true all the firearm use allegations.  The court found true the prior conviction allegations.

At the sentencing hearing, defendant made an oral motion to strike his prior convictions.  In denying the motion, the court explained that defendant had "continued to commit new offenses" since the earliest of the priors in 1999, including new felonies, and that it would not be "in the spirit of justice" to strike any prior convictions.  In imposing sentence, the court stated that given the nature of the crimes, defendant deserved the "longest prison term possible."  The court declined to exercise its discretion to strike any of the enhancements.

The court imposed a sentence of 72 years 8 months, plus 28 years to life.  The court awarded defendant 564 total days of presentence custody credits and imposed fees and fines as required by law.

This appeal followed.

## DISCUSSION

## 1.    The Substantial Evidence Argument (Count 2)

Defendant contends there is insufficient evidence supporting his conviction for kidnapping to commit robbery.

In resolving a question of substantial evidence in a criminal case, our role "is a limited one."  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the

6

entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "[W]e must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*Ibid.*) We do not resolve credibility issues or conflicts in the evidence. "[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact." (*Ibid.*)

Asportation is the essential element of aggravated kidnapping. Penal Code section 209, subdivision (b)(2) provides: "This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense."

Defendant argues there was only evidence the victim was moved a short distance to the middle of the street before defendant fled the scene. He says the minimal movement of the victim was merely a continuous part of the ongoing robbery and did not increase the risk of harm to him.

In deciding whether the movement of the victim was merely incidental to the robbery, the jury evaluates the " ' "scope and nature" of the movement. [Citation.] This includes the actual distance a victim is moved. However, . . . there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong.' " (*People v. Martinez* (1999) 20 Cal.4th 225, 233 (*Martinez*), overruled in part on other grounds in *People v. Fontenot* (2019) 8 Cal.5th 57, 70.)

The jury must then decide whether the movement subjected the victim to an increased risk of harm above and

7

beyond that inherent in the robbery. (*Martinez, supra,* 20 Cal.4th at p. 233.) " 'This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased. [Citations.]' " (*Ibid.*) Under the 1997 amendments to Penal Code section 209, subdivision (b)(2), the Legislature eliminated the former requirement "that the movement of the victim 'substantially' increase the risk of harm to the victim." (*People v. Vines* (2011) 51 Cal.4th 830, 869, fn. 20.) Under the amended statute, it suffices if the harm was increased in some manner, and it need not be substantial. (*Ibid.*)

Our Supreme Court has concluded the increased risk of harm to the victim is not limited to bodily harm but includes an increased risk of psychological harm. (*People v. Tuan Van Nguyen* (2000) 22 Cal.4th 872, 885 ["the Legislature intended to target coerced movement resulting in an increased risk either of grave physical injury or of mental terror"]; accord, *People v. Robertson* (2012) 208 Cal.App.4th 965, 984.)

*People v. Corcoran* (2006) 143 Cal.App.4th 272 (*Corcoran*) involves facts similar to the facts in this case. There, the defendant and an accomplice entered a bingo hall and attempted a robbery. The accomplices aborted their effort to obtain money from the victims after one of the victims escaped. (*Id.* at p. 279.) They herded the remaining victims at gunpoint approximately 10 feet to a back room and threatened to kill them if they tried to leave. Defendant and his accomplice then fled the scene. (*Ibid.*) In affirming the conviction for aggravated kidnapping, the court

8

said, "the movement of the victims did not serve to facilitate the forcible attempted taking of money from the bingo hall." (*Id.* at p. 280.) Rather, it served purposes unrelated to the attempted robbery, "removing the victims from public view, decreasing the odds that the attempted robbery of cash from the bingo hall would be detected, increasing the risk of harm should any victim attempt to flee, and facilitating the robbers' escape." (*Ibid.*)

Here, defendant forcibly took Mr. Gear's wallet at gunpoint after threatening to kill him. Instead of immediately fleeing with the wallet, defendant dragged Mr. Gear approximately 25 to 30 feet to the middle of the street, using a chokehold and continuing to hold a gun to Mr. Gear's head. Defendant then ordered Mr. Gear to get down on the ground and not to move. These actions were not necessary to accomplish the robbery of Mr. Gear's wallet. They were meant to increase Mr. Gear's fear as he lay on the ground, vulnerable and uncertain what further harm defendant might inflict, and they made it easier for defendant to flee the scene. The evidence amply supports defendant's conviction for aggravated kidnapping.

## 2. The Void for Vagueness Argument (Count 2)

Defendant contends Penal Code section 209, subdivision (b)(2), defining the asportation element of aggravated kidnapping, is impermissibly vague and violates his due process rights.

Respondent contends defendant forfeited this argument by failing to object to, or seek modification of, CALCRIM No. 1203 which instructs the jury on the asportation element of Penal Code section 209. The lack of a timely and meaningful objection in the trial court ordinarily forfeits the contention for appeal. (*People v. Marchand* (2002) 98 Cal.App.4th 1056, 1060 (*Marchand*).)

9

Defendant concedes he did not object to the jury instruction but argues he is not raising a claim of instructional error. He says he may raise a facial challenge to the statute without having objected below and that we may consider the argument because it raises a pure question of law.

Defendant should have raised his objection in the trial court. If he had, the trial court could have considered proposed modifications to CALCRIM No. 1203 to address the due process concerns defendant now raises for the first time in this court. However, we will consider the merits of defendant's claim because the facial challenge to the statutory language raises a pure question of law. (*Marchand, supra*, 98 Cal.App.4th at p. 1061 [appellate court may consider constitutional issues raised for the first time on appeal especially where enforcement of penal statutes is involved].)

" 'The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of "life, liberty, or property without due process of law," as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7).' " (*People v. Morgan* (2007) 42 Cal.4th 593, 605 (*Morgan*).)

There is a strong presumption favoring the constitutionality of legislative enactments. Statutes " ' "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute . . . cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.] Therefore, 'a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that "the law is impermissibly vague *in all of*

*its applications.*" . . . [Citation.]' " (*Morgan, supra*, 42 Cal.4th at pp. 605–606.)

Defendant has not made such a showing here.  He says the statute is unconstitutionally vague because it requires the trier of fact to guess at the type of movement required to accomplish a "hypothetical 'mere robbery' " and to guess at the " 'harm' or 'risk of harm' that would have arisen from a hypothetical 'mere robbery.' "

Defendant relies on *Johnson v. United States* (2015) 576 U.S. 591 and its conclusion that a clause in the Armed Career Criminal Act was impermissibly vague.  The clause in question imposed increased penalties for the federal crime of felon in possession of a firearm if the defendant had three or more prior convictions for a violent felony and included in the definition of " 'violent felony' " one that " 'involves conduct that presents a serious potential risk of physical injury to another . . . .' " (*Johnson,* at p. 593.)  The Supreme Court found that language was too imprecise to give fair notice about what conduct fell within the purview of the statute.  (*Id*. at p. 606.)  Defendant says Penal Code section 209, subdivision (b)(2) is similarly infirm.  That argument was already rejected in *People v. Ledesma* (2017) 14 Cal.App.5th 830, 838 (*Ledesma*).

*Ledesma* explained, "[u]nlike the . . . clause at issue in *Johnson*, California's asportation requirement compels juries and courts to apply a legal standard to real-world facts.  As *Johnson* itself recognizes, this difference is crucial." (*Ledesma, supra*, 14 Cal.App.5th at p. 838.)  The court in *Ledesma* reasoned that *Johnson* distinguished the imprecise clause from other federal and state criminal laws that use terms like "substantial risk," "grave risk," and "unreasonable risk," which are constitutional

11

because they gauge the riskiness of conduct on a particular occasion.  (*Ledesma,* at p. 838.)  *Ledesma* found the Supreme Court in *Johnson* did " 'not doubt the constitutionality of [such] laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct . . . .' "  (*Ledesma,* at p. 838.)  *Ledesma* held California's aggravated kidnapping statute applies the qualitative standards of whether the movement was merely incidental to the underlying felony and whether it substantially increased the risk of harm above that inherent in committing the underlying felony.  (*Id.* at pp. 838–839.)

We agree with and follow *Ledesma.*  Penal Code section 209, subdivision (b)(2) does not require factfinders to rely on hypothetical abstractions and speculation.  The statutory language is not impermissibly vague, and defendant's due process rights were not infringed.

### 3.    The Sentencing Claims

#### a.    The prison priors

The court imposed nine 1-year terms commonly referred to as "prison priors" pursuant to Penal Code section 667.5, subdivision (b) (three 1-year terms on each of counts 1, 2 & 8).  The enhancements were lawfully imposed at the time of sentencing in June 2019.

During the pendency of this appeal, Senate Bill 136 (2019–2020 Reg. Sess.) was passed, amending Penal Code section 667.5.  (Stats. 2019, ch. 590, § 1.)  The parties agree it applies retroactively and that defendant is entitled to the benefit of the amendments to section 667.5 which became effective January 1, 2020.  We agree with the parties.  (See, e.g., *People v. Winn* (2020) 44 Cal.App.5th 859, 872–873 (*Winn*).)  Because defendant's

prior convictions are not the enumerated sexually violent offenses now required for imposition of a one-year enhancement, the one-year terms imposed on counts 1, 2 and 8 must be stricken.

We may strike the enhancements without remanding for a new sentencing hearing. In imposing sentence, the court chose upper and consecutive terms and stated its intention was "to impose the longest prison term possible for [defendant] believing that he is deserving of such a sentence." Because the trial court imposed the maximum sentence, it is not necessary to remand for a new sentencing hearing. (*People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15; *Winn, supra,* 44 Cal.App.5th at p. 873.) Remanding under these circumstances would serve no purpose but to waste scarce judicial resources. We therefore strike each of the nine 1-year enhancements imposed pursuant to Penal Code section 667.5, subdivision (b) and affirm the judgment of conviction as so modified.

### b. The abstract of judgment

At sentencing, among other fees and fines, the court imposed a $30 criminal conviction assessment (Gov. Code, § 70373) and a $40 court operations assessment (Pen. Code, § 1465.8). The minute order from the sentencing hearing and the abstract of judgment reflect a criminal conviction assessment in the amount of $210 and a court operations assessment in the amount of $280.

Defendant contends the abstract of judgment must be corrected to reflect that the trial court orally imposed only a $30 criminal conviction assessment (Gov. Code, § 70373) and a $40 court operations assessment (Pen. Code, § 1465.8) and not the $210 and $280 assessments memorialized in the abstract.

13

Defendant says the abstract must be amended to conform to the court's oral pronouncement at the sentencing hearing.

Ordinarily the oral pronouncement of judgment controls. (See, e.g., *People v. Thompson* (2009) 180 Cal.App.4th 974, 978.) However, this is not an inflexible rule. Where portions of the record are in conflict, " 'that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation]. Therefore whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case.' " (*People v. Smith* (1983) 33 Cal.3d 596, 599.) Absent evidence to the contrary, we presume the trial court followed the applicable law in imposing sentence. (See, e.g., *People v. Moran* (1970) 1 Cal.3d 755, 762; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496; see also Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].)

Here, the imposition of the two assessments on each of the seven counts on which defendant was convicted was mandated by the statutory language. We find no reason in the record to presume the trial court was unaware of this well-established law. While the court neglected to state on the record that the assessments were "as to each count," the court's minute order accurately so reflects. The abstract of judgment is in accord with the court's minute order and the applicable law and need not be amended. (See, e.g., *People v. Sencion* (2012) 211 Cal.App.4th 480, 484 [rejecting claim abstract of judgment required amendment where trial court failed to orally impose criminal conviction assessment and court operations assessment on four counts as to which sentence had been stayed; abstract correctly memorializing assessments on each count was not in error

14

despite failure of court to state assessments in oral pronouncement of judgment].)

## DISPOSITION

Each of the nine 1-year enhancements imposed pursuant to Penal Code section 667.5, subdivision (b) is stricken.  The judgment of conviction, as so modified, is affirmed in all other respects.

The superior court is directed to prepare a new abstract of judgment in accordance with this opinion and transmit it forthwith to the Department of Corrections and Rehabilitation.


GRIMES, Acting P. J.


WE CONCUR:


STRATTON, J.


WILEY, J.

15