Filed 8/23/17

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEXANDER XAVIER LEDESMA,<br><br>    Defendant and Appellant. | D070755<br><br>(Super. Ct. No. SCD257086) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura W. Halgren, Judge. Affirmed as modified.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellate.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

_____

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

A jury convicted Alexander Xavier Ledesma of rape (Pen. Code,[1] § 261, subd. (a)(2); count 1) and kidnapping to commit rape (§ 209, subd. (b)(1); count 2). The jury found true allegations attached to count 1 under California's One Strike Law that Ledesma's kidnapping of the victim substantially increased the risk of harm to her (§ 667.61, subds. (a), (c)(1), (d)(2)) and that Ledesma kidnapped the victim (§ 667.61, subds. (b), (c)(1), (e)(1)). The jury also found true the allegation under section 667.8, subdivision (a) that Ledesma kidnapped the victim to commit a sexual offense. The jury found not true additional allegations that Ledesma personally used a firearm to commit both counts 1 and 2. After the jury rendered its verdict, the court sentenced Ledesma to 25 years to life on count 1 under the One Strike Law. Under section 654 the court stayed the sentences on count 2 and on the remaining allegations related to count 1.

On appeal, Ledesma asserts his conviction must be reversed because both the crime of aggravated kidnapping and the One Strike Law sentence enhancement for aggravated kidnapping are constitutionally defective. Specifically, he argues that under the United States Supreme Court's decision in *Johnson v. United States* (2015) 576 U.S. ___ [135 S.Ct. 2551] (*Johnson*) these statutes violated his due process rights because they are impermissibly vague. Ledesma also asserts, and the Attorney General concedes, that the abstract of judgment should be modified to remove the inaccurate reference to a true finding of personal use of a firearm. We reject Ledesma's constitutional vagueness

---

[1]     Undesignated statutory references are to the Penal Code.

challenge and affirm the judgment as modified to accurately reflect the sentence imposed by the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

The victim, Rosalind F., and her boyfriend went out in downtown San Diego to celebrate Rosalind's birthday. After a late concert, the couple called a cab to take them home to nearby Point Loma. While in the cab, Rosalind decided she wanted to stop at a liquor store near their apartment for a bottle of brandy. Her boyfriend wanted to go straight home, so the pair agreed he would pay the cab driver to drop him off at home first, and then take Rosalind to the liquor store and then bring her home.

After dropping Rosalind's boyfriend at home the cab pulled up in front of the liquor store and Rosalind went inside. When she came back out, the cab driver had left. Rosalind was scared when she realized the cab was gone because she had seen fights and police at a nightclub next to the liquor store. While she was considering what to do, a man, later identified as Ledesma, approached her from behind. Ledesma told Rosalind he had a gun and that she should do what he told her. Rosalind felt what she assumed was a gun on her back. Ledesma told Rosalind to start walking and, fearing for her life, she complied.

Ledesma stopped in a dark area behind a building and told Rosalind to lie on the ground. Ledesma threatened to kill Rosalind if she did not do as he said. Rosalind's clothes were removed and Ledesma climbed on top of her, then raped her. While Ledesma was on top of her Rosalind saw a man standing nearby. She yelled out, and Ledesma got up and ran away.

3

Rosalind walked toward the man, who was heading toward her. She told him she had been attacked and the man used Rosalind's phone to call 911. The man, who was doing electrical work at a nearby business, testified that he went outside to smoke a cigarette around 2:00 a.m. and heard a sound, then saw a man emerge from a fenced-in area behind some businesses and walk away quickly. When the police arrived about 40 minutes after 911 was called, Rosalind was visibly upset. She was interviewed by the officers at the scene, then taken home.[2] Rosalind provided the police with the clothes she was wearing when she was attacked. The next morning Rosalind agreed to a Sexual Assault Response Team (SART) exam. A nurse examined Rosalind and collected external genital and internal vaginal swabs. The nurse also noted an abrasion that was consistent with Rosalind's account of the attack.

The police crime laboratory found sperm cells on the swabs taken during the SART exam and on the jeans and underwear Rosalind wore the night of the attack. The sperm cells matched Ledesma's DNA. Ledesma was eventually arrested and charged with rape (§ 261, subd. (a)(2); count 1) and kidnapping to commit rape (§ 209, subd. (b)(1); count 2). The district attorney also brought allegations under California's One Strike Law (§ 667.61). With respect to count 1, the information alleged Ledesma (1) kidnapped Rosalind and that the movement substantially increased the risk of harm to her

---

[2]     When she was initially interviewed by the responding officers, Rosalind told them that she thought the attack had occurred behind the liquor store. She later remembered that Ledesma had taken her farther away, behind a strip of businesses where the electrician was working that were between 170 and 430 feet from the liquor store. At trial, Rosalind testified she was certain Ledesma raped her behind the businesses near where the electrician was working.

over and above the level of risk necessarily inherent in the rape (§ 667.61, subds. (a), (c)(1), (d)(2)); (2) kidnapped Rosalind (§ 667.61, subds. (a), (c)(1), (e)(1)); and (3) used a firearm in the commission of the rape (§ 667.61, subds. (a), (c)(1), (e)(3)). The information also alleged with respect to both counts that Ledesma personally used a firearm (§ 12022.53, subds. (a)(3) & (8), (b)) and kidnapped Rosalind to commit a sexual offense (§ 667.8, subd. (a)).

Ledesma testified in his own defense at trial. He denied raping Rosalind and claimed she was a prostitute. Ledesma said he approached Rosalind and offered her $150 for a "date." According to Ledesma, Rosalind agreed and led him behind some buildings where they had sex. Ledesma testified that after it was over, he refused to give her any money and left.

The jury rejected Ledesma's version of events and convicted him of both counts. The jury also found true the aggravating allegations that (1) Ledesma kidnapped Rosalind; (2) that the kidnapping substantially increased the risk of harm to Rosalind, and (3) Ledesma kidnapped Rosalind to commit a sexual offense. The jury found the firearm allegations not true. The court sentenced Ledesma to 25 years to life on count 1 under the One Strike Law. The court stayed the terms on the remaining allegations related to count 1 and stayed the sentence and related allegations on count 2.

## DISCUSSION

### I

Ledesma's primary contention on appeal is that language contained in California's aggravated kidnapping statute (§ 209) and the One Strike Law (§ 667.61) are

unconstitutionally vague under *Johnson, supra,* 135 S. Ct. 2551. He argues that the definition of aggravated kidnapping to commit rape—which limits the provision's application to circumstances where "movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the underlying offense" (§ 209, subd. (b)(2))—is not sufficiently concrete to give citizens fair warning of the crime. Ledesma also challenges similar language contained in section 667.61, subdivision (d)(2) that permits more severe sentencing for the crime of rape where "the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense."

A

" 'The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of "life, liberty, or property without due process of law," as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7).' [Citation.] 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.' " (*People v. Garcia* (2014) 230 Cal.App.4th 763, 768; see also *People v. Fuiava* (2012) 53 Cal.4th 622, 696.) A statute is void for vagueness if it does not define the proscribed offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (*Kolender v.*

6

*Lawson* (1983) 461 U.S. 352, 357; accord, *People v. Morgan* (2007) 42 Cal.4th 593, 605.)

California's aggravated kidnapping statute, section 209, requires proof of certain elements not required for prosecution under the simple kidnapping statute, section 207. For instance, as in this case, the statute applies if the kidnapping is done for the purpose of committing rape. (§ 209, subd. (b)(1).) Section 209, modified by the Legislature in 1997 to conform to existing case law, requires that the movement of the victim be "beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2); see *People v. Martinez* (1999) 20 Cal.4th 225, 232, fn. 4 [noting 1997 modification to codify asportation standard set forth in *People v. Daniels* (1969) 71 Cal.2d 1119; & Stats. 1997, ch. 817, § 17; Sen. Rules Com., Analysis of Assem. Bill No. 59 (1997-1998 Reg. Sess.) as amended Sept. 4, 1997, p. 3.)

These two aspects of the asportation requirement, movement beyond that which is incidental to the underlying crime and movement that increases the risk of harm to the victim, " 'are not mutually exclusive, but interrelated.' [Citation.] [¶] In determining 'whether the movement is merely incidental to the [underlying] crime . . . the jury considers the "scope and nature" of the movement. [Citation.] This includes the actual distance a victim is moved. However . . . there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong.' [Citations.] [¶] " 'The second prong . . . refers to whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in [the underlying crime].

7

[Citations.] This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased.' " (*People v. Martinez, supra*, 20 Cal.4th at pp. 232-233.)

Since the 1997 modification of the statute, appellate courts have routinely assessed the validity of aggravated kidnapping convictions in published decisions without suggestion that the section 209, subdivision (b)(2) asportation requirement is unworkable or too vague to be constitutional. (See, e.g., *People v. Williams* (2017) 7 Cal.App.5th 644, 667-668 [incidental movement of the victims insufficient to support convictions under section 209]; *People v. Simmons* (2015) 233 Cal.App.4th 1458, 1471-1474 [ample evidence of asportation to support section 209 convictions]; *People v. Robertson* (2012) 208 Cal.App.4th 965, 983-987; see also *People v. Vines* (2011) 51 Cal.4th 830, 869-871 [affirming aggravated kidnapping conviction under pre–1997 version of section 209, subdivision (b)].)

The One Strike Law applied in this case to require the imposition of a sentence of 25 years to life on Ledesma's conviction for rape, carries an almost identical limitation to that found in section 209, subdivision (b)(2). As noted, section 667.61, subdivision (d)(2) permits the law's increased penalty if the rapist "kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense."

8

B

In *Johnson*, the United States Supreme Court considered the "residual clause" of the Armed Career Criminal Act (ACCA), which imposes increased penalties for the federal crime of felon in possession of a firearm if the defendant has three or more prior convictions for a violent felony. (18 U.S.C. § 924, subd. (e)(2)(B).) The ACCA defines a violent felony as one that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or [¶] (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .*" (*Ibid.,* italics added.) "The closing words of this definition [became] known as the [ACCA]'s residual clause." (*Johnson, supra*, 135 S. Ct. at p. 2556.)

*Johnson* was the fourth time the Supreme Court considered the meaning of the residual clause. The court held previously that the ACCA's definition of the term "violent felony," which includes the residual clause, must be construed according to what is known as the categorical approach. (*Johnson, supra*, 135 S. Ct. at p. 2557.) "Under the categorical approach, a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.' [Citation.] [¶] Deciding whether the residual clause covers a crime thus requires a court to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." (*Ibid.*)

9

*Johnson* concluded this counterfactual inquiry—which "ties the judicial assessment of risk to a judicially imaged 'ordinary case' of a crime, not to real-world facts or statutory elements"—gave rise to vagueness that was fatal to the clause. (*Johnson, supra*, 135 S.Ct. at p. 2557.) The court reasoned there was "grave uncertainty" about how to estimate the risk posed by a crime in an imagined, ordinary case because it was unclear how to determine what kind of conduct is involved in an ordinary case of a crime. (*Ibid.*) In addition, the *Johnson* court explained the residual clause's "serious potential risk of physical injury" standard was too "imprecise" about how much risk is necessary for a crime to qualify as a violent felony when the standard is applied not to "real-world facts" but rather to a "a judge-imagined abstraction." (*Id*. at p. 2558.)

The *Johnson* court reinforced its conclusion that the residual clause was unacceptably indeterminate by highlighting its "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause" in its own prior cases and the same difficulties encountered by the lower federal courts. (*Johnson, supra*, 135 S. Ct. at pp. 2558-2560.) The court noted that these interpretive difficulties were evidence of vagueness not because courts had been divided "about whether the residual clause covers this or that crime" but because the cases reflected a "pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider." (*Id*. at p. 2560.)

## C

Ledesma argues that *Johnson* announced a new test for unconstitutional vagueness and that the asportation requirements of these two statutes fail the test. We disagree.

Unlike the residual clause at issue in *Johnson*, California's asportation requirement compels juries and courts to apply a legal standard to real world facts. As *Johnson* itself recognizes, this difference is crucial. In distinguishing the residual clause from constitutional "federal and state criminal laws [that] use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' " the court stated that those "laws require gauging the riskiness of conduct *in which an individual defendant engages on a particular occasion.*" (*Johnson, supra*, 135 S.Ct. at p. 2561, italics added.) The court did "not doubt the constitutionality of [such] laws that call for the application of a qualitative standard such as 'substantial risk' to *real-world conduct* . . . ." (*Ibid.*, italics added; accord, *Welch v. United States* (2016) ___ U.S. ___ [136 S. Ct. 1257, 1262 ["The Court's analysis in *Johnson* thus cast no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion.' " (Italics omitted.)].)

Unlike the categorical analysis courts were required to engage in under the ACCA, the asportation requirements in sections 209 and 667.61 require no hypothetical case of the underlying crime that determines the statutes' applicability. Rather, the jury in this case (and in all aggravated kidnapping cases) assessed whether Ledesma's movement of Rosalind was merely incidental to the rape and whether that movement substantially increased the risk of harm over and above the risk of harm inherent in rape. This is precisely the type of determination that *Johnson* held was beyond the void-for-vagueness problem presented by the residual clause. (*Johnson, supra*, 135 S.Ct. at p. 2561 ["As a general matter, we do not doubt the constitutionality of laws that call for the application

11

of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'"].)

That Court of Appeal opinions both affirm and reverse convictions based on the asportation requirement in these statutes is not, as Ledesma advances, evidence that a principled and objective standard has not been established. *Johnson* noted "[t]he most telling feature of the lower courts' decisions [was] not division about whether the residual clause covers this or that crime (*even clear laws produce close cases*)." (*Johnson, supra*, 135 S.Ct. at p. 2560, italics added.) Rather, it was the "pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider." (*Ibid*.) In contrast, California cases on the asportation element of aggravated kidnapping, including those Ledesma cites, show broad agreement on both the nature of the inquiry required and the relevant factors to evaluate when deciding whether the facts in a case are sufficient to satisfy the asportation element of the aggravated kidnapping statute and the One Strike Law. (See *People v. Dominguez* (2006) 39 Cal.4th 1141, 1151-1152 [summarizing the standard applied in determining the asportation element of aggravated kidnapping; explaining that "the jury must 'consider [] the "scope and nature" of the movement,' as well as 'the context of the environment in which the movement occurred' " (italics omitted) & articulating "various circumstances the jury should consider, such as whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes"]; *People v. Vines,*

12

*supra,* 51 Cal.4th at p. 870 [noting same standard]; *People v. Leavel* (2012) 203 Cal.App.4th 823, 833 [same]; *People v. Power* (2008) 159 Cal.App.4th 126, 138 [same].)

For these reasons we reject Ledesma's assertion that *Johnson* requires us to find the asportation elements of sections 209 and 667.61 are unconstitutionally vague. " 'The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as "reasonable," "prudent," "necessary and proper," "substantial," and the like. Indeed, a wide spectrum of human activities is regulated by such terms: thus one man may be given a speeding ticket if he overestimates the "reasonable or prudent" speed to drive his car in the circumstances (Veh. Code, § 22350), while another may be incarcerated in state prison on a conviction of wilful homicide if he misjudges the "reasonable" amount of force he may use in repelling an assault [citation]. . . . "There is no formula for the determination of reasonableness." Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind.' " (*People v. Morgan* (2007) 42 Cal.4th 593, 606.)

II

The parties agree that the abstract of judgment does not accurately reflect the trial court's pronouncement of the sentence it imposed on Ledesma. As noted, the prosecution alleged three qualifying circumstances under the One Strike Law for count 1: aggravated kidnapping under section 667.61, subdivision (d)(2); kidnapping under section 667.61, subdivision (e)(1); and firearm use under section 667.61, subdivision (e)(2). The jury found the firearm use allegation was not true and at the sentencing hearing the court

13

sentenced Ledesma to a term of 25 years to life on count 1 based on the finding under section 667.61, subdivision (d)(2) and imposed and stayed a sentence of 15 years to life for the subdivision (e)(1) finding. The abstract of judgment, however, shows the imposition of two additional sentence enhancements under section 667.61, subdivision (e) on count 1. We direct the trial court to correct this error. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 186-187 [appellate court may correct clerical errors " 'on its own motion or upon the application of the parties.' "].)

## DISPOSITION

The judgment is affirmed as modified. The trial court is directed to correct the abstract of judgment to reflect only one true finding under section 667.61, subdivision (e). The trial court is also directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.


14