Filed 4/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br>v.<br><br>ALPHONZO McINNIS,<br><br>　　　Defendant and Appellant. | A159194<br><br>(Alameda County<br>Super. Ct. No. 18CR008268) |

A jury convicted defendant Alphonzo McInnis of aggravated kidnapping to commit robbery or a specified sex crime in violation of Penal Code section 209, subdivision (b) (§ 209(b)) and three counts of sex offenses against a minor.  As to the sex offenses, the jury found true the aggravated kidnapping circumstance of the One Strike Law (Pen. Code, § 667.61, subd. (d)(2) (§ 667.61(d)(2)).

The trial court sentenced defendant to three consecutive terms of life in prison without the possibility of parole.

Defendant contends (1) the crime of aggravated kidnapping under Penal Code section 209(b) and the One Strike Law kidnapping provision of Penal Code section 667.61 are void for vagueness, (2) the trial court erred in its reasoning for imposing consecutive life terms, (3) the parole revocation fine should be stricken from the sentence, and (4) the abstract of judgment should be corrected.

1

We reject defendant's first contention, but his remaining contentions have merit. Therefore, we will strike the parole revocation fine and remand for the trial court to exercise its discretion on whether to impose concurrent or consecutive life terms using appropriate considerations. The judgment is otherwise affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

The Alameda County District Attorney filed an amended information charging defendant with forcible sexual penetration of Jane Doe 1, a minor age 14 or older (Pen. Code,[1] § 289, subd. (a)(1)(C); count 1); forcible rape of minor Doe 1 (§§ 261, subd. (a)(2), 264, subd. (c)(2); counts 2 and 4); forcible oral copulation of minor Doe 1 (former § 288a, subd. (c)(2)(C); count 3); kidnapping of Doe 1 to commit robbery and/or a specified sex crime (§ 209(b); count 5); kidnapping of Jane Doe 2 to commit robbery and/or a specified sex crime (*ibid.*; count 6); and attempted second degree robbery of Doe 2 (§§ 211, 664; count 7). It was alleged the offenses against Doe 1 (counts 1 through 5) occurred April 19, 2018, and the offenses against Doe 2 (counts 6 and 7) occurred on April 28, 2018.

As to counts 1 through 4, the district attorney alleged that defendant kidnapped the victim within the meaning of sections 207 and 209 (§ 667.61, subd. (e)(1)), and the movement of the victim substantially increased the risk of harm to the victim (§ 667.61(d)(2)); that defendant personally used a dangerous or deadly weapon (§ 667.61, subd. (e)(3)); that the victim was a minor, age 14 or older (§ 667.61, subds. (l), (m)); and that defendant used a firearm or deadly weapon, a BB gun (§ 12022.3, subd. (a)).

Following a jury trial, defendant was found guilty of counts 2 through 5, and not guilty of count 7. The jury deadlocked on counts 1 and 6, and the

---

[1] Further undesignated statutory references are to the Penal Code.

2

court declared a mistrial as to those counts. As to counts 2 through 4, the jury found true the kidnapping allegations (§ 667.61(d)(2) and subd. (e)(1)) and that the victim was a minor 14 years of age or older. The jury found not true the allegation that defendant used a deadly or dangerous weapon in the commission of the offenses. Counts 1 and 6 were later dismissed at the prosecution's request.[2]

The trial court sentenced appellant to three consecutive terms of life without the possibility of parole for counts 2, 3, and 4. For count 5, the court imposed a term of life with the possibility of parole and stayed the punishment under section 654.

*Offenses Involving Jane Doe 1*

On April 19, 2018, Doe 1 was 15 years old and a freshman in high school. Doe 1 slept in that day and was late for school. She started walking to school around 10:00 or 11:00 a.m.

While walking on a residential street, Doe 1 heard footsteps and was grabbed from behind. Her assailant covered her eyes and wrapped his arm around her torso. She heard a male voice say something like, "Don't yell. Don't turn around and look at me." The man said he had a gun and he would shoot her if she yelled or turned around. Doe 1 felt a pressure on her hip that she thought might be a gun. The man pulled Doe 1 and directed her physically to walk with him. He moved his hand from her eyes and had his arm wrapped around her neck. Doe 1 never saw his face.

---

[2] In a bifurcated proceeding, the court found defendant had four prior felony convictions, two of those convictions resulted in prison terms, and one was a "strike" under sections 667 and 1170.12.

At first, the man had Doe 1 continue walking in the direction she had been heading. After about a block, he turned around, and he and Doe 1 walked back the way they had come from.

The man pulled Doe 1 into a yard past a fence. They walked down a driveway and to a side yard. The man told Doe 1 to open her backpack and take her wallet out. She saw what appeared to be the "tip of a gun" with the rest of the gun in the man's sleeve. Doe 1 told him she had $15 and showed him her wallet. He said it was not enough. He told her to take out her I.D., and she showed him her school I.D. Doe 1 asked if she could go, and the man said something like "I'm thinking about it" or "maybe."

The man started feeling Doe 1's body under her clothes. He commented on her body and asked whether she had ever had sex. She said no. He said something along the lines of "we can do this the easy way or the hard way." He pressed something Doe 1 thought was a gun against her neck. The man pulled her pants and underwear down. Standing behind her, he put his fingers "in between the curtains" of her vagina. He tried to put his penis in her vagina. He pressed hard and it hurt. Doe 1 tried to resist by keeping her legs closed. He asked why she was resisting and she said, "Because I don't want to do this."

The man forced Doe 1 on her knees. He told her to spit on his penis and put it in her mouth. His penis went "all the way into [her] mouth." He moved his body back and forth for a few seconds. Then he "tried to insert his penis into [her] vagina again." The man used more force than he used the first time. He was able to fully insert his penis into her vagina and it hurt a lot. Eventually, the man let Doe 1 leave and said, "Just keep walking and don't look back."

4

The same day, Doe 1 met with a police officer and showed him the house where she had been raped. She also had a sexual assault forensic examination. The examiner collected DNA swab samples from Doe 1's vaginal cavity and observed multiple injuries to her vagina. The DNA profile of a sperm cell fraction recovered from the vaginal swabs matched the defendant's DNA.[3]

**DISCUSSION**

A. *Vagueness Challenge*

Defendant contends the One Strike Law aggravated kidnapping finding in counts 2 through 4 and the aggravated kidnapping conviction (count 5) must be reversed on the ground the crime of aggravated kidnapping is void for vagueness.

"The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of 'life, liberty, or property without due process of law,' as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7). Under both constitutions, due process of law in this context requires two elements: a criminal statute must ' "be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt." ' " (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567; see *Kolender v. Lawson* (1983) 461 U.S. 352, 357 ["the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people

---

[3] We do not describe the evidence related to counts 6 and 7 involving Jane Doe 2 (described in the parties' appellate briefs) because the jury found defendant not guilty of count 7 and count 6 was dismissed.

can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement"].)

Aggravated kidnapping under section 209(b) is defined as kidnapping or carrying away an individual to commit robbery, rape, oral copulation, or other specified sex crime where "the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2).)

Similarly, the One Strike Law aggravated kidnapping circumstance of section 667.61(d)(2) applies when a defendant has committed rape, oral copulation, or other specified sex crime with the additional circumstance that the "defendant kidnapped the victim . . . and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense." The movement required for the aggravated kidnapping circumstance must "not [be] merely incidental to the commission of the" underlying offense. (*People v. Perkins* (2016) 5 Cal.App.5th 454, 466.)

Defendant claims the section 209, subdivision (b)(2) phrase "merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense" is unconstitutionally vague under *Johnson v. United States* (2015) 576 U.S. 591 (*Johnson*). He acknowledges this contention was rejected in *People v. Ledesma* (2017) 14 Cal.App.5th 830, 839 (*Ledesma*), but he argues *Ledesma* was wrongly decided.

1. *Johnson*

In *Johnson*, the United States Supreme Court held the residual clause of the Armed Career Criminal Act of 1984 (ACCA) was impermissibly vague.

6

(*Johnson*, *supra*, 576 U.S. at p. 597.)  The ACCA forbids certain individuals from possessing firearms and punishes a person with three or more prior convictions for a "violent felony" more harshly.  (*Id*. at p. 593.)  The ACCA defines a violent felony to include any crime punishable by more than a year in prison that " 'is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*' "  (*Id*. at pp. 593–594, quoting 18 U.S.C. § 924(e)(2)(B).)  The italicized phrase is known as the residual clause.  (*Id*. at p. 594.)

Previously, the Supreme Court had held the residual clause of the ACCA was to be interpreted using the categorical approach, which meant a sentencing court had to assess whether a prior conviction qualified as a violent felony " 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.' "  (*Johnson*, *supra*, 576 U.S. at p. 596.)  Thus, a court deciding whether a crime fell within the residual clause was required "to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury."  (*Ibid*.)[4]

---

[4] The *Johnson* majority also observed that the inclusion of burglary and extortion among the listed offenses preceding the residual clause confounded the task because the elements of burglary and extortion do not "normally cause physical injury."  (*Johnson*, *supra*, 576 U.S. at p. 596.)  This suggested a court had to do more than evaluate "the chances that the physical acts that make up the crime will injure someone.  The act of making an extortionate demand or breaking and entering into someone's home does not, in and of itself, normally cause physical injury.  Rather, risk of injury arises because the extortionist might engage in violence *after* making his demand or because the burglar might confront a resident in the home *after* breaking and entering."  (*Ibid*.)  In other words, a court must not only imagine an idealized ordinary case of a crime, it must also imagine how events will unfold after the crime is committed.

The majority in *Johnson* concluded that "the indeterminacy of the wide-ranging inquiry required by the residual clause" was void for vagueness. (*Johnson*, *supra*, 576 U.S. at p. 597.) It found "[t]wo features of the residual clause conspire to make it unconstitutionally vague." (*Ibid*.) First, the residual clause "leaves grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements. How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves? . . . To take an example, does the ordinary instance of witness tampering involve offering a witness a bribe? Or threatening a witness with violence? Critically, picturing the criminal's behavior is not enough; . . . assessing 'potential risk' seemingly requires the judge to imagine how the idealized ordinary case of the crime subsequently plays out." (*Ibid*.)

Second, the majority concluded, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction. By asking whether the crime '*otherwise* involves conduct that presents a serious potential risk,' moreover, the residual clause forces courts to interpret 'serious potential risk' in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives. These offenses are 'far from clear in respect to the degree of risk each poses.' [Citation.] Does the ordinary burglar invade an occupied home by night or an unoccupied home by day? Does the typical extortionist threaten his victim in person with the use of force, or does he threaten his victim by mail with the revelation of embarrassing personal information? By combining indeterminacy about how to measure the risk posed by a crime with

indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." (*Johnson*, *supra*, 576 U.S. at p. 598.)

Reviewing its four prior decisions on interpreting the residual clause, the court observed its "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy." (*Johnson*, *supra*, 576 U.S. at p. 598.)

The *Johnson* majority rejected the suggestion of the Government and the dissent that its holding could place in doubt "dozens of federal and state criminal laws [that] use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk.'" (*Johnson*, *supra*, 576 U.S. at p. 603.) "[A]lmost all of the cited laws require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion.* As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree,' [citation]. The residual clause, however, requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime. Because 'the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect,' this abstract inquiry offers significantly less predictability than one '[t]hat deals with the actual, not with an imaginary condition other than the facts.'" (*Id.* at pp. 603–604.)

### 2. *Ledesma*

Defendant Ledesma argued that the offense of aggravated kidnapping under section 209(b) and the One Strike Law aggravated kidnapping

9

circumstance of section 667.61(d)(2) are unconstitutionally vague under *Johnson*, *supra*, 576 U.S. 591. (*Ledesma*, *supra*, 14 Cal.App.5th at p. 835.) Like defendant, Ledesma challenged the language related to the movement (also called "asportation") requirement.

The *Ledesma* court rejected the argument because "[u]nlike the residual clause at issue in *Johnson*, California's asportation requirement compels juries and courts to apply a legal standard to real-world facts. As *Johnson* itself recognizes, this difference is crucial." (*Ledesma*, *supra*, 14 Cal.App.5th at p. 838.) The court reasoned, "Unlike the categorical analysis courts were required to engage in under the ACCA, the asportation requirements in sections 209 and 667.61 require no hypothetical case of the underlying crime that determines the statutes' applicability. Rather, the jury in this case (and in all aggravated kidnapping cases) assessed whether [the defendant's] movement of [the victim] was merely incidental to the rape and whether that movement substantially increased the risk of harm over and above the risk of harm inherent in rape. This is precisely the type of determination that *Johnson* held was beyond the void-for-vagueness problem presented by the residual clause." (*Id.* at pp. 838–839.)

The court also observed, "[A]ppellate courts have routinely assessed the validity of aggravated kidnapping convictions in published decisions without suggestion that the section 209, subdivision (b)(2) asportation requirement is unworkable or too vague to be constitutional." (*Ledesma*, *supra*, 14 Cal.App.5th at p. 836.)

The court concluded with a quote from our Supreme Court. " ' "The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' 'substantial,' and the like. Indeed, a wide spectrum of

10

human activities is regulated by such terms: thus one man may be given a speeding ticket if he overestimates the 'reasonable or prudent' speed to drive his car in the circumstances (Veh. Code, § 22350), while another may be incarcerated in state prison on a conviction of wil[l]ful homicide if he misjudges the 'reasonable' amount of force he may use in repelling an assault [citation]. . . . 'There is no formula for the determination of reasonableness.' Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." ' (*People v. Morgan* (2007) 42 Cal.4th 593, 606.)" (*Ledesma, supra,* 14 Cal.App.5th at pp. 839–840.)

> 3. Analysis

We agree with *Ledesma* that *Johnson* does not require us to find the crime and special circumstance of aggravated kidnapping unconstitutionally vague. The *Johnson* majority "d[id] not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct" (*Johnson, supra,* 576 U.S. at pp. 603–604), and that is what the aggravated kidnapping statutes involve, the application of a qualitative standard to real-world conduct.

Defendant offers five reasons he believes *Ledesma* was incorrectly decided. First, he asserts the court's observation that "appellate courts have routinely assessed the validity of aggravated kidnapping convictions . . . without suggestion that the . . . asportation requirement is unworkable or too vague to be constitutional" (*Ledesma, supra,* 14 Cal.App.5th at p. 836) is irrelevant because cases are not authority for propositions not considered and because *Johnson* was not decided until 2015. We find the observation relevant, however, because it contrasts California appellate courts' routine application of the aggravated kidnapping statutes with the Supreme Court's

11

"repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause" of the ACCA. (*Johnson*, *supra*, 576 U.S. at p. 598.) The *Johnson* majority pointed out that in three of the court's previous four decisions on the residual clause, "we found it necessary to resort to a different ad hoc test to guide our inquiry." (*Ibid*.) Further, lower federal courts found the residual clause " 'nearly impossible to apply consistently,' " and their decisions indicated "pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider." (*Id*. at p. 601.) It is relevant that California appellate court decisions on aggravated kidnapping do not demonstrate a similar pervasive disagreement or difficulty regarding the nature of the inquiry.

Second, defendant suggests the *Ledesma* court incorrectly rejected the argument that *Johnson* announced a new test for unconstitutional vagueness. Defendant cites *Welch v. United States* (2016) ___ U.S. ___, ___ [136 S.Ct. 1257, 1264], as support that *Johnson* announced a "new rule." But the "new rule" of *Johnson* was its holding that the residual clause of the ACCA was void for vagueness. (*Welch*, *supra*, 136 S.Ct. at p. 1265 ["By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes' "].) *Johnson* did not purport to set forth a new test for determining whether a law is unconstitutionally vague.

Third, defendant argues the *Ledesma* court's reasoning is flawed because the aggravated kidnapping statute requires a jury to "compare real world facts to a hypothetical rape or robbery," and this is contrary to the rule in *Johnson*. We disagree with the premise of this argument. *Johnson* did not

12

condemn the comparison of real-world facts to hypothetical offenses. It found fault with asking courts to imagine how an idealized ordinary version of a crime would play out as the test for determining whether the crime qualified as a violent felony under the residual clause. (*Johnson*, *supra*, 576 U.S. at p. 597.) Aggravated kidnapping does not suffer from this fault. As our high court has explained, "[F]or aggravated kidnapping, the victim must be forced to move a substantial distance, the movement cannot be merely incidental to the target crime, and the movement must substantially increase the risk of harm to the victim. Application of these factors in any given case will *necessarily depend on the particular facts and context of the case.*" (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1153, italics added and original italics deleted.)

Fourth, quoting the *Johnson* court's observation that the residual clause of the ACCA "has proved 'nearly impossible to apply consistently' " (*Johnson*, *supra*, 576 U.S. at p. 601), defendant claims the asportation standard of aggravated kidnapping is similarly suspect because it is applied inconsistently. Defendant cites various robbery and rape cases; in some cases, the movement of the victim was sufficient to support aggravated kidnapping, in others it was not. These cases do not show that the asportation requirement of aggravated kidnapping is impossible to apply consistently; they show only that the application of the law to the facts yields, not surprisingly, different results in different cases.[5] As the *Johnson*

---

[5] Defendant notes that the jury asked for clarification about the "substantial distance" definition in the jury instructions on aggravated kidnapping and simple kidnapping and requested additional argument on "substantial distance" and "beyond merely incidental." But a jury request for clarification does not necessarily suggest that a law is unconstitutionally vague. The jury here also asked for a definition of "minor or moderate bodily harm."

13

majority observed, "even clear laws produce close cases." (576 U.S. at p. 601.) The problem with the residual clause was that cases demonstrated a "pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider." (*Ibid*.) The *Ledesma* court explained, "In contrast, California cases on the asportation element of aggravated kidnapping . . . show broad agreement on both the nature of the inquiry required and the relevant factors to evaluate when deciding whether the facts in a case are sufficient to satisfy the asportation element of the aggravated kidnapping statute and the One Strike Law." (*Ledesma*, *supra*, 14 Cal.App.5th at p. 839.)

Fifth, defendant notes the United States Supreme Court has invalidated another federal statute on vagueness grounds in *Sessions v. Dimaya* (2018) ___ U.S. ___ [138 S.Ct. 1204]. *Dimaya* involved a "straightforward application" of *Johnson* to a statute that defines a "crime of violence" to include " 'any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.' " (138 S.Ct. at pp. 1211, 1213; 18 U.S.C. § 16(b).) The statute at issue in *Dimaya*, like the residual clause in *Johnson*, first, required "a court to identify a crime's 'ordinary case' in order to measure the crime's risk" and, second, required application of an uncertain standard of "violence" to this " 'judge-imagined abstraction.' " (138 S.Ct. at pp. 1215–1216.) As we have explained, the California aggravated kidnapping statutes do not suffer from these two infirmities.

In short, defendant has not persuaded us to depart from *Ledesma*. Accordingly, we reject his contention that the aggravated kidnapping statutes are void for vagueness.

B.    *Consecutive Terms*

   1.    <u>Background</u>

Before pronouncing the sentence, the trial court stated, "The factors in circumstances in aggravation, number one, the crime involved great violence, bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness and callousness."

"The victim was particularly vulnerable. [¶] The manner in which the crime was carried out indicated planning, sophistication and professionalism. [¶] The defendant engaged in violent conduct that indicates a danger to society. [¶] The defendant's prior convictions as an adult are numerous and are of increasing seriousness. [¶] The defendant has served a prior prison term. [¶] The defendant was on parole when the crime was committed. [¶] The defendant's prior performance on probation and parole were unsatisfactory. [¶] There are no factors in mitigation."

Immediately following this statement, the court imposed a term of life without the possibility of parole (LWOP) for count 2 pursuant to section 667.61, subdivision (l). It then imposed the same punishment for count 3, stating, "And that's consecutive. [¶] The reason I'm doing that and not making it concurrent is because I'm just concerned that there might be some problem with the appeal on Count Two for some reason. · I don't think there will be, but just out of an abundance of caution." The court then imposed another consecutive sentence for count 4 "for the same reason."

   2.    <u>Analysis</u>

A trial court is required to state its reasons for imposing consecutive terms. (Cal. Rules of Court, rule 4.406(b)(5).)[6] Defendant contends the trial

---

   [6] "Factors affecting the decision to impose consecutive rather than concurrent sentences include:

15

court erred in relying on the possibility of appellate relief as to one or more of the counts as a reason to impose consecutive rather than concurrent terms. He seeks remand for resentencing for the trial court to appropriately exercise its discretion in determining whether to impose consecutive or concurrent sentences for counts 3 and 4. The Attorney General does not dispute that the trial court's stated reason for imposing consecutive terms was improper. Instead, he argues any error is harmless because the court found multiple aggravating factors, any one of which justified the imposition of consecutive terms. In response, defendant asserts the trial court was "quite specific" about its reason for imposing consecutive terms.

We agree with defendant that the trial court was clear about why it chose consecutive rather than concurrent LWOP terms, and that its sole reason (the possibility of appellate relief on one or more counts) was not an appropriate basis for imposing consecutive terms. As defendant points out, when a defendant has an aggregate sentence and a count is reversed on appeal, the trial court may reconsider its prior sentencing choices. (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1253.) *Burbine* expressly cautioned

---

"(a) Facts relating to crimes [¶] Facts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."

"(b) Other facts and limitations [¶] Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except: [¶] (1) A fact used to impose the upper term; [¶] (2) A fact used to otherwise enhance the defendant's sentence in prison or county jail under section 1170(h); and [¶] (3) A fact that is an element of the crime may not be used to impose consecutive sentences." (Cal. Rules of Court, rule 4.425.)

against sentencing courts attempting "to take into account the likelihood of certain counts surviving appeal—a sentencing algorithm which might unnecessarily lead to longer original sentences." (*Id.* at p. 1258.) Accordingly, we will remand to the trial court to resentence defendant using appropriate sentencing factors.

C.     *Parole Revocation Fine*

Section 1202.45, subdivision (a), provides the court "shall . . . assess an additional parole revocation restitution fine" "[i]n every case where a person is convicted of a crime and his or her sentence *includes a period of parole*." (Italics added.)

The trial court imposed and suspended a parole revocation restitution fine under section 1202.45. Defendant argues this was error because he received a sentence with no possibility of parole. The Attorney General responds that section 1202.45 applies here because defendant received a stayed term of life with the possibility of parole for count 5.

In *People v. Oganesyan* (1999) 70 Cal.App.4th 1178 (*Oganesyan*), cited by defendant, the Court of Appeal rejected the Attorney General's position. The issue was whether section 1202.45 applied where a defendant received an indeterminate term for one offense and LWOP for a different offense. (*Id.* at p. 1181.) The court concluded it did not, reasoning: "[T]he language of section 1202.45 indicates that the overall sentence is the indicator of whether the additional [parole revocation] restitution fine is to be imposed. Section 1202.45 indicates that it is applicable to a 'person . . . whose sentence includes a period of parole.' At present, defendant's 'sentence' does not allow for parole. When we apply a commonsense interpretation to the language of section 1202.45 [citations], we conclude that because the sentence does not

17

presently allow for parole and there is no evidence it ever will, no additional restitution fine must be imposed." (*Id*. at p. 1185.)

Courts have followed *Oganesyan* in *People v. Battle* (2011) 198 Cal.App.4th 50, 63 (*Battle*) [improper to impose parole revocation fine where the defendant received an indeterminate term of 25 years to life for one count and LWOP for another count] and *People v. Jenkins* (2006) 140 Cal.App.4th 805, 819 (*Jenkins*) [error to impose section 1202.45 fine where the defendant was sentenced to 35 years to life and LWOP].

The Attorney General does not address *Oganesyan*, and the cases he cites do not involve defendants who received LWOP terms.[7] We think the reasoning in *Oganesyan*, *Battle*, and *Jenkins* is sound, and we conclude section 1202.45 is inapplicable to defendant. (See Couzens et al., Sentencing Cal. Crimes (The Rutter Group September 2020 update) § 17:13; cf. *People v. Brasure* (2008) 42 Cal. 4th 1037, 1075 [distinguishing *Oganesyan* and holding a determinate term includes a parole revocation fine even when coupled with an LWOP term].) The $10,000 parole revocation fine will be stricken.

D.    *Error in the Abstract of Judgment*

As to counts 2, 3, and 4, defendant was sentenced under section 667.61, subdivision (l), of the One Strike Law. The abstract of judgment, however, incorrectly shows that defendant was sentenced pursuant to section 667.7. The parties agree this is a clerical error that should be corrected. We agree

---

[7] The Attorney General cites cases (*People v. Calabrese* (2002) 101 Cal.App.4th 79 and *People v. Tye* (2000) 83 Cal.App.4th 1398) that hold only that when execution of sentence is suspended (and the defendant is placed on probation), section 1202.45 still requires imposition of a restitution fine. But those cases did not involve LWOP sentences and the present case does not involve a suspended sentence. Defendant's term for count 5 was stayed under section 654; it was not suspended for probation.

18

with the parties, and we instruct the trial court to reflect the correct sentencing statute, section 667.61, when it issues a new abstract of judgment.

## DISPOSITION

The matter is remanded for resentencing in accordance with this opinion. The parole revocation fine under section 1202.45 is stricken. The new abstract of judgment shall reflect (1) that the parole revocation fine has been stricken and (2) that defendant was sentenced pursuant to section 667.61. In all other respects, the judgment is affirmed.

_____

Miller, J.

WE CONCUR:

_____

Kline, P.J.

_____

Stewart, J.

A159194, *People v. McInnis*

20

Court:  Alameda County Superior Court

Trial Judge:  Hon. Thomas Rogers

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Rene A. Chacon, Julia Y. Je, Deputy Attorneys General, for Plaintiff and Respondent

A159194, *People v. McInnis*