Filed 4/27/23  P. v. Paige CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D079349 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD285593) |
| DALIJAH ARMEASE PAIGE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Dalijah Armease Paige appeals from his conviction for aggravated kidnapping to commit rape (Pen. Code, § 209, subd. (b)(1))[1] and related crimes. He contends that: (1) there is insufficient evidence to support the asportation element of aggravated kidnapping; and (2) the aggravated kidnapping statute is void for vagueness. We reject both contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2020, J.V. was a student at San Diego State University and had a job working at San Diego City College (City College). Around 3:30 p.m. on March 18, she was walking on the City College campus from her office to her car after work. There were few people on campus because the COVID-19 stay-at-home orders had just gone into effect. As J.V. was walking through a deserted courtyard area, a man later identified as Paige stepped out of an alcove of a campus building and approached her near an emergency call box. J.V. noticed a suitcase in the alcove from which he emerged.

J.V. said "hi" to Paige. He immediately grabbed her by the shoulder and arms and dragged her towards the alcove and away from the emergency call box. He dragged her approximately 23 feet to the back of the alcove, which was 79 inches wide and 42 inches deep. J.V. was five feet four inches tall and weighed around 115 pounds; Paige was six feet two inches tall and weighed around 164 pounds.

J.V. struggled and screamed for help. Paige began punching her in the face. J.V. fell to the ground and assumed the fetal position in a corner of the alcove. She attempted to kick Paige to keep him away from her.

Paige tried to remove J.V.'s pants as she continued to kick him. J.V. pleaded with Paige to stop and offered to send him money by Venmo. Paige

_____

1 All further statutory references are to the Penal Code.

2

became angry and kneed her in the face, loosening one of her teeth and causing her to bleed. J.V. blacked out for a second. When she came to, Paige's pants were down and he was on his knees stroking his exposed penis a few feet from her face.

A janitor who happened to be walking by heard J.V. screaming for help. When he turned around and looked into the alcove, he saw Paige knee J.V. in the face three times and punch her in the head. Paige's pants were down and his buttocks exposed. The janitor yelled at Paige, who quickly pulled up his pants, then turned around. Paige claimed that J.V. had taken his phone. Paige then grabbed his suitcase and walked away.

From her office, an administrative employee also heard J.V. screaming. She ran outside and saw the janitor and J.V., who was bleeding from her mouth and had blood on her face. J.V. was hysterical and said that she had been attacked. The employee observed that J.V.'s underwear had been pulled up above her pants. The janitor asked the other employee to call the campus police.

Soon afterwards, a City College police sergeant received a description of Paige and apprehended him walking with a suitcase not far from where the attack occurred. He had blood on his hands and abrasions on his knuckles.

Paige testified in his own defense and admitted his involvement in the incident, but denied that he intended to rape J.V. When he encountered J.V., Paige was homeless and was on campus to charge his phone. He saw J.V. walking by and called out to her. She said "hi." Paige thought she "looked good" and asked for her number. According to Paige, J.V. then grabbed his cell phone from him. In response, Paige threw her to the ground "as a means of self-defense" to get his phone back. After J.V. backed up into a corner, Paige hit her three times and "gave her a knee."

3

At trial, a jury convicted Paige of aggravated kidnapping to commit rape (§ 209, subd. (b)(1)), attempted forcible rape (§§ 261, subd. (a)(2), 664), assault with intent to commit rape (§ 220, subd. (a)(1)), and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)). The court sentenced Paige to life imprisonment with the possibility of parole for the aggravated kidnapping. It struck the attempted rape conviction (as a lesser included offense) and stayed the sentence on the remaining two counts under section 654.

## DISCUSSION

### I

Paige first contends that there is insufficient evidence to support the asportation element of aggravated kidnapping. (§ 209, subd. (b)(2).) He argues that his movement of the victim to the alcove was merely incidental to the attempted rape and did not increase the risk of harm. We disagree.

We apply the substantial evidence standard of review in evaluating a sufficiency of evidence claim. We examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1117–1118.)

Aggravated kidnapping is defined as a kidnapping to commit robbery, rape, or other specified crimes. (§ 209, subd. (b)(1).) In 1997, the Legislature amended the aggravated kidnapping statute to conform to existing case law by adding the following provision: "This subdivision shall apply only if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2).)

4

Under this statute, "the victim must be forced to move a *substantial distance*, the movement cannot be merely *incidental* to the target crime, and the movement must *substantially increase* the risk of harm to the victim." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1153 (*Dominguez*).) "[W]hether the victim's forced movement was merely incidental to the rape is necessarily connected to whether it substantially increased the risk to the victim." (*Id.* at p. 1152.) " 'These two aspects are not mutually exclusive, but interrelated.' " (*Ibid.*)

"The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement." (*Dominguez, supra*, 39 Cal.4th at p. 1152.) The Supreme Court has articulated "various circumstances the jury should consider, such as whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes." (*Ibid.*)

"[N]o minimum distance is required to satisfy the asportation requirement [citation], so long as the movement is substantial." (*Dominguez, supra*, 39 Cal.4th at p. 1152.) "Measured distance . . . is a relevant factor, but one that must be considered in context, including the nature of the crime and its environment. In some cases, a shorter distance may suffice in the presence of other factors, while in others a longer distance, in the absence of other circumstances, may be found insufficient." (*Ibid.*) For example, "moving robbery victims between six and 30 feet within their home or apartment . . . may be viewed as merely incidental to the commission of the robbery and thus insufficient to satisfy the asportation requirement of aggravated kidnapping." (*Ibid.* [citing cases].) "Yet, dragging a store clerk nine feet from the front counter of a store to a small back room for the

5

purpose of raping her . . . might, under the circumstances, substantially increase the risk of harm to the victim and thus satisfy the asportation requirement." (*Ibid.*, citing *People v. Shadden* (2001) 93 Cal.App.4th 164, 167 (*Shadden*).)

Consistent with these principles, the trial court instructed the jury with CALCRIM No. 1203 on aggravated kidnapping. This instruction stated that the forced movement had to be for "a substantial distance . . . beyond that merely incidental to the commission of a rape." It also stated: "As used here, *substantial distance* means more than a slight or trivial distance. The movement must have increased the risk of physical or psychological harm to the person beyond that necessarily present in the rape. In deciding whether the movement was sufficient, consider all the circumstances relating to the movement."

We conclude that substantial evidence supports the jury's guilty verdict on the aggravated kidnapping count. First, the jury could reasonably have found that the forced movement of J.V. was not merely incidental to the rape. " '[A] rape . . . does not necessarily require movement to complete the crime.' " (*Shadden, supra*, 93 Cal.App.4th at p. 169.) "Where a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape." (*Ibid.*) As in *Shadden*, "[t]he jury could reasonably infer that the movement was not incidental to the attempted rape because [Paige] only began the sexual attack after he moved [the victim]." (*Ibid.*; see also *People v. Salazar* (1995) 33 Cal.App.4th 341, 347 ["while the movement was perhaps incidental to [the defendant]'s particular plan for rape, it was not incidental to the actual commission of the crime itself"].)

6

Second, there is substantial evidence that the movement substantially increased the risk of harm to J.V. Before attempting to rape J.V., Paige forcibly dragged her 23 feet from an open courtyard near an emergency call box to the corner of an alcove that was enclosed on three sides. Though the distance was not great, the jury could reasonably conclude that this forced movement substantially increased the risk of harm to J.V. by decreasing the likelihood of detection, distancing her from the emergency call box she could have used to summon help, and making it more difficult for her to escape without physically fighting her way out of an enclosed alcove against a man who was significantly taller and heavier. This is sufficient to support the jury's verdict. (See, e.g., *Dominguez*, *supra*, 39 Cal.4th at pp. 1153–1154 [forced movement of rape victim 25 feet from side of road down a hill to an orchard was sufficient for aggravated kidnapping because it substantially decreased the possibility of detection, escape, or rescue]; *Shadden*, *supra*, 93 Cal.App.4th at pp. 169–170 [forced movement of rape victim nine feet from front counter of store to back room was sufficient for aggravated kidnapping because the movement "made it less likely for others to discover the crime and decreased the odds of detection"].)

The mere fact that Paige was unsuccessful in escaping detection and committing the rape does not alter the result. The relevant question for the jury was whether the forced movement substantially increased *the risk* of harm. (See *People v. Singh* (2019) 42 Cal.App.5th 175, 188 [forced movement of child 10 feet from inside of bus to outside of bus substantially increased the risk of harm even though attempted abduction was unsuccessful and mother immediately got child back from defendant].) "The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased." (*People v. Rayford* (1994) 9 Cal.4th 1, 14.) Accordingly, we

7

conclude that the evidence is sufficient to support the jury's verdict on the aggravated kidnapping count.

## II

Paige next contends that the aggravated kidnapping statute (§ 209) is void for vagueness under the due process clause of the Fourteenth Amendment and *Johnson v. United States* (2015) 576 U.S. 591 (*Johnson*). He acknowledges that we rejected this argument in *People v. Ledesma* (2017) 14 Cal.App.5th 830 (*Ledesma*), but asks us to reconsider our decision. We see no reason to depart from *Ledesma* or reconsider its holding. For the reasons fully explained in *Ledesma*, we reject Paige's argument that the asportation element of the aggravated kidnapping statute is unconstitutionally vague under *Johnson*. (*Ledesma*, at pp. 837–840.)

## DISPOSITION

The judgment is affirmed.


BUCHANAN, J.

WE CONCUR:



HUFFMAN, Acting P. J.



DATO, J.


8